[No. 17853-2-II.    Division Two.    October 16, 1995.]

THE CITY OF MONTESANO, *Respondent*, v. DANIEL WELLS, *Petitioner*.

*Michael W. Jordan* and *Jordan, Imler & McGovern,* for petitioner.

*Daniel O. Glenn* and *Glenn & Hoffman, P.S.,* for respondent.

FLEISHER, J. — In this case, we are asked to decide whether a bicyclist can be charged under the law prohibiting driving a vehicle while under the influence of intoxicating liquor or drugs (DUI). Holding that the Legislature intended the law to apply to motor vehicles only, we reverse Daniel Wells's DUI conviction.

## FACTS

At about 3 A.M. on June 14, 1992, Daniel Wells was riding his bicycle on a back street in Montesano. Officer Steve Needham pulled him over after observing Wells swerving and making very wide turns. Officer Needham testified that Wells's speech was slurred, that he smelled of intoxicants, and that he was swaying on his feet. Based on these observations, Officer Needham asked Wells to perform field sobriety tests. He failed some of these tests,

and his performance on others was described as "border-line." Wells was then arrested for driving while intoxicated.

After Wells was transported to jail, an officer read him his *Miranda*[1] rights, which he waived. However, the police did not read him implied consent warnings because the "Implied Consent Warning for Breath" form states it applies only to persons arrested for "driving a *motor* vehicle . . . [or] being in actual physical control of a *motor* vehicle while under the influence of intoxicating liquor." (Emphasis added).[2] Officers then asked Wells to take a breath test. Apparently fearing he would lose his license if he did not agree, he submitted to the breath test. The breath samples Wells gave indicated his blood alcohol level was .13. He admitted he had been drinking, but denied he was drunk. Wells said he had been swerving to avoid potholes, and he attributed his poor performance on the sobriety tests to nervousness.

At a bench trial in Montesano Municipal Court, Wells was convicted of driving while intoxicated. He then requested a trial de novo in Grays Harbor County Superior Court. That court also found him guilty. Wells's motion for a new trial was denied, and this appeal followed.

## DISCUSSION

■ Wells contends that the Legislature did not intend to criminalize riding a bicycle while intoxicated. Interpretation of a statute is a question of law and thus subject to de novo review. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 814, 828 P.2d 549 (1992); *State v. Campbell*, 125 Wn.2d 797, 800, 888 P.2d 1185 (1995). An appellate court's primary goal is to give effect to legislative intent. *Cowiche Canyon*, 118 Wn.2d at 813. Thus, we construe statutes in the manner that best advances the

---

[1]*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3d 974 (1966).

[2]Clerk's Papers at 17(a).

perceived legislative purpose. *Wichert v. Cardwell*, 117 Wn.2d 148, 151, 812 P.2d 858 (1991).

Former RCW 46.61.502, under which Wells was charged, provides that "[a] person is guilty of driving while under the influence of intoxicating liquor or any drug if the person *drives a vehicle* within this state while . . . [intoxicated]." Laws of 1987, ch. 373, § 2 (emphasis added). Title 46 RCW defines "vehicle" and "motor vehicle." Both of these terms are used in the various DUI statutes.

RCW 46.04.320 defines a *motor vehicle* as "every vehicle which is self-propelled . . ."; thus, a bicycle is not a motor vehicle. Before 1991, the definition of *vehicle* in RCW 46.04.760 expressly excluded bicycles, as well as all devices moved by human power. *See* former RCW 46.04.670 (Laws of 1961, ch. 12). However, the definition of vehicle was amended in 1991 to include "every device capable of being moved upon a public highway and in, upon, or by which any persons or property is or may be transported or drawn upon a public highway, *including bicycles*." RCW 46.04.670 (emphasis added).

Thus, a literal reading of RCW 46.61.502 and RCW 46.04.670 appears to allow the state to charge bicyclists with driving under the influence.[3] However, when we consider the intent of these and related statutes, we conclude that such a reading is incorrect.

■ ■ In construing statutes, spirit and intent prevail over the literal letter of the law. *Wichert*, 117 Wn.2d at

---

[3]Indeed, most courts that have construed similar statutes have concluded, with little analysis, that DUI laws are applicable to bicyclists. *See, e.g., Commonwealth v. Brown*, 620 A.2d 1213, 1215 (Pa. Super. Ct. 1993); *State v. Howard*, 510 So.2d 612, 613, 12 Fla.L.Weekly 1540 (Fla. Dist. Ct. App. 1987), *review denied*, 520 So.2d 584 (1988); *State v. Tehan*, 190 N.J. Super. 348, 352, 463 A.2d 403, 405 (1982); *State v. Hilderbrand*, 40 Ohio App. 3d 42, 44, 531 N.E.2d 775, 776 (1987); *State v. Shepard*, 1 Ohio App. 3d 104, 106, 439 N.E.2d 920, 922 (1981); *State v. Woodruff*, 81 Or. App. 484, 487, 726 P.2d 396, 397, 73 A.L.R.4th 1135, *review denied*, 302 Or. 460 (1986). Of these, only the New Jersey statute construed in *Tehan* explicitly excludes bicycles from the definition of "vehicle." Two other New Jersey courts have held that because of this express exclusion, DUI laws do not apply to bicyclists. *State v. Machuzak*, 227 N.J. Super. 279, 282, 546 A.2d 1099, 1100 (1988); *State v. Johnson*, 203 N.J. Super. 436, 441, 497 A.2d 242, 244 (1985).

151. Moreover, when considering a criminal statute, any doubt regarding the Legislature's intent must be resolved in a defendant's favor; "[p]enal statutes are strictly construed so that only conduct which is clearly within the statutory terms is subject to punitive sanctions." *State v. Johnson*, 119 Wn.2d 167, 172, 829 P.2d 1082 (1992).

To construe the statutes in this case, we examine the scope and intent of the various DUI laws. Then we consider the Legislature's recent move to include bicycles within the statutory definition of "vehicle." Finally, we address policy concerns.

The numerous statutes that address driving while intoxicated are clearly intended to apply only to motor vehicles.[4] The 1979 law enacting these provisions does not contain an intent section, but is titled "AN ACT Relating to *motor vehicle* offenses involving alcohol or drugs." (Laws of 1979, 1st Ex. Sess., ch. 176) (emphasis added). When this law was amended in 1987, a legislative finding was added stating in part, "The legislature finds the existing statutes that establish the criteria for determining when a person is guilty of driving a *motor vehicle* under the influence of intoxicating liquor or drugs are constitutional and do not require any additional criteria to ensure their legality." (Laws of 1987, ch. 373, § 1) (emphasis added).

A review of the statutory scheme as a whole also leads us to conclude that the Legislature did not intend to apply the DUI law to bicyclists. The various statutory provisions regarding DUI are closely connected. For example, being in physical control of a *motor vehicle* (RCW 46.61.504) is a lesser included offense of driving a vehicle while intoxicated (RCW 46.61.502). *McGuire v. City of Seattle*, 31 Wn. App. 438, 442-43, 642 P.2d 765 (1982), *review denied*, 98 Wn.2d 1017 (1983). The additional element of DUI, as opposed to physical control, is vehicular motion. *McGuire*, 31 Wn. App. at 442. However, because the crime of physical

---

[4]These statutes include RCW 46.61.502 through 46.61.5195 and the implied consent law, RCW 46.20.308.

control requires that a person be in control of a *motor vehicle,* it does not apply to bicycles.

■ Courts construe statutes to avoid " 'absurd or strained consequences.' " *Wright v. Engum,* 124 Wn.2d 343, 351, 878 P.2d 1198 (1994) (quoting *In re Eaton,* 110 Wn.2d 892, 901, 757 P.2d 961 (1988)). Including bicyclists in the crime of driving under the influence, but not in the lesser included offense of physical control, would lead to an absurd result. We do not believe that this is the result intended by the Legislature. Rather, it appears that the Legislature used the terms "vehicle" and "motor vehicle" interchangeably. We note that this inattentive drafting did not create a question of interpretation at the time these laws were passed, because no possible consequences for bicyclists could attach to the intermittent use of the term "vehicle" rather than "motor vehicle," as neither term included bicycles.

The penalties for violating either of these two statutes also evidence the close connection of the various DUI statutes. The penalties for these crimes are found in former RCW 46.61.515, entitled *"Driving or being in physical control of motor vehicle* while under the influence of intoxicating liquor or drugs . . . ." Laws of 1985, ch. 352, § 1 (emphasis added). This statute imposes identical penalties for the two crimes. Furthermore, the penalties for driving or being in physical control of a motor vehicle include suspension or revocation of the convicted person's driver's license. Former RCW 46.61.515(3) (Laws of 1985, ch. 352, § 1). Because bicycling is an unlicensed activity, this penalty clearly cannot be imposed on bicyclists. *State v. Tehan,* 190 N.J. Super. 348, 352, 463 A.2d 403, 405 (1982).

Yet another related provision is the implied consent law. Its language also links RCW 46.61.502 and .504:

> (1) *Any person who operates a motor vehicle* within this state is deemed to have given consent, subject to the provisions of RCW 46.61.506, to a test or tests of his or her breath or blood . . . [if] . . . the arresting officer has reasonable

grounds to believe the person had been *driving or was in actual physical control of a motor vehicle* while under the influence of intoxicating liquor.

Former RCW 46.20.308(1) (Laws of 1989, ch 337, § 8) (emphasis added). As the officers involved in Wells's arrest realized, this provision on its face does not apply to bicyclists.

A search for the Legislature's intent in the 1991 amendment that brought bicycles into the definition of vehicles sheds little light on the question. This definitional amendment was part of the Bicycle Safety Act, which added a new section to RCW 43.43, a chapter concerning the Washington State Patrol. Laws of 1991, ch. 214. The new section states in part:

> Bicycling is increasing in popularity as a form of recreation and as an alternative mode of transportation. To make bicycling safer, the various law enforcement agencies should enforce traffic regulations for bicyclists. By enforcing bicycle regulations, law enforcement officers are reinforcing educational programs. Bicycling takes more skill than most people realize. Since bicyclists have a low profile in traffic and are unprotected, they need more defensive riding skills than motorists do.

RCW 43.43.390.

The purpose of the Act was to implement a general bicycle safety and awareness program. Nothing in its history suggests that legislators considered the effect on DUI laws of including bicycles in the general definition of "vehicle." Furthermore, the law under which Wells was charged, RCW 46.61.502, has been amended twice since enactment of the Bicycle Safety Act, in 1993 and again in 1994. Neither of these two most recent amendments alters the 1987 legislative finding that refers to "motor vehicles" or makes any reference to the expanded definition of "vehicle."

Policy considerations also support the conclusion that bicyclists cannot be charged under DUI laws. A California

court that concluded DUI laws do not apply to bicyclists pointed out the inherent differences between driving and bicycling. *Clingenpeel v. Municipal Court of Antelope*, 108 Cal. App. 3d 394, 166 Cal. Rptr. 573 (1980). The *Clingenpeel* court noted that the severe penalties imposed on intoxicated drivers of motor vehicles

> reflect the grave public concern over 'the severe threat to the public safety which is posed by the intoxicated driver' that arises from 'combining sharply impaired physical and mental faculties *with a vehicle capable of great force and speed . . . .*'

*Clingenpeel*, 108 Cal. App. 3d at 401 (citations omitted) (emphasis in original). The court went on to state that because bicycles do not have the force and speed of cars, a drunk bicyclist is not capable of causing the tremendous "carnage and slaughter" associated with drunk driving. *Clingenpeel*, 108 Cal. App. 3d at 402.

We agree that while riding a bicycle while intoxicated may pose a danger, it is not of the same magnitude as the hazard posed by the intoxicated driver of a motor vehicle. Implicit in all DUI statutes is the recognition that driving or being in control of a motor vehicle while intoxicated poses an extreme danger to the driver and to others. As the *Clingenpeel* court recognized, that danger is inherent in motor vehicles because of their weight and the speed at which they travel. Moreover, because bicyclists are required to abide by the rules of the road (*see* RCW 46.61.755), police may cite any person riding in an unsafe manner, whether due to intoxication or not.

■ In summary, we hold that neither legislative intent, the statutory scheme, nor public policy support the conclusion that RCW 46.60.502 was intended to apply to bicyclists. Accordingly, Wells's conviction is reversed.

Wells further argues that the DUI laws are unconstitutionally vague as applied to bicyclists, that the trial court erred in admitting the results of his breath test, and in denying his motion for a new trial. Because we reverse his conviction, we need not reach these issues.

Reversed.

HOUGHTON, A.C.J., and BRIDGEWATER, J., concur.

Reconsideration denied November 13, 1995.